# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 17, 2014 Session

# DAVID JONES v. MORTGAGE MENDERS, LLC, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 06C1912     Hon. Hamilton V. Gayden, Jr., Judge**

---

**No. M2014-00140-COA-R3-CV - Filed December 12, 2014**

---

This appeal involves several claims relating to the sale and refinancing of Plaintiff's two properties. When Plaintiff defaulted on the mortgages, Mortgage Menders, LLC offered to purchase the properties, fulfill the mortgage indebtedness, refurbish the properties for resale, and remit half of the profits when the properties sold. Mortgage Menders, LLC borrowed money from Defendant Hazlewood to accomplish the terms of the agreement. Defendant Hazlewood also served as an escrow and closing agent for two later transactions involving the properties. When Plaintiff failed to receive any portion of the proceeds relating to the sale of one of the properties, he filed suit for breach of contract, fraud, and civil conspiracy against each of the parties involved. Defendant Hazlewood filed a motion for summary judgment, asserting that he was entitled to judgment as a matter of law. The trial court partially granted the motion for summary judgment, finding that Defendant Hazlewood was not a party to the contract and that he had not participated in a civil conspiracy. Years later, the court dismissed the remainder of the case for failure to prosecute. Plaintiff appeals. The decision of the trial court is affirmed in part and reversed in part. We remand the case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Janet L. Layman and James Daniel Richardson Roberts, Jr, Nashville, Tennessee, for the appellant, David Jones.

Todd E. Panther, Nashville, Tennessee, for the appellees, Advantage Title and Escrow and Victor Hazelwood.

# OPINION

## I. BACKGROUND

David Jones ("Plaintiff") inherited the properties at issue, 4201 West Hamilton Avenue ("West Hamilton") and 1609 11th Avenue North ("11th Avenue"), from his mother. When Plaintiff realized that he was unable to remit regular mortgage payments, he met with Mortgage Menders, LLC ("MM"), which was operated by Jeffrey Hardney, Curtis Sharpe, and Thomas Lanier.[1]  MM agreed to purchase the properties, fulfill the mortgage indebtedness, refurbish the properties for resale, and remit half of the profits when the properties sold.  Plaintiff met with MM at Advantage Title and Escrow ("Advantage Title"), which was owned by Victor Hazelwood ("Defendant"), to sign an agreement in accordance with their arrangement relating to West Hamilton.  The agreement, dated May 6, 2003, provided,

> This is an agreement by and between [Plaintiff] and [MM] and/or assigns. Made on this May 6, 2003 for the purchase of [West Hamilton].
>
> Whereas, for consideration of $500.00 cash paid in hand, and other consideration stated herein below, to [Plaintiff] from [MM], [Plaintiff] will deed [West Hamilton] to [MM].
>
> Whereas [MM] agrees to reinstate mortgage on [West Hamilton] upon receipt of reinstatement figures.  Also, [MM] will perform all repairs on this property needed to present this property for sale.
>
> Whereas [MM] will keep the current mortgage with Citifinancial current by making monthly payments when they are due.
>
> Whereas, upon the sale of [West Hamilton], [MM] will pay off the mortgage with Citifinancial, reimburse the LLC for repair expense, interest expense, commission and sale expense, and give [Plaintiff] 50% of the profit made on this property.  Receipts will be supplied for all expenses.  Property will be priced at market value.

Despite the terms of the agreement providing that MM agreed to purchase the property from Plaintiff, Defendant remitted the $500 payment to Plaintiff and listed himself as the buyer

---

[1] The record before this court does not provide any details regarding Mr. Sharpe's involvement, if any, in the transactions at issue in this case.

of the property. In fact, Defendant reinstated the mortgage and provided a $150,000 installment loan to MM in which he provided advances on the loan as MM worked on the property.

Thereafter, MM and Plaintiff amended the original agreement to include 11th Avenue. Defendant claims on appeal that when he learned of the amended agreement, he demanded payment on his loan. MM agreed. In order to repay Defendant, MM refinanced West Hamilton with Equity Mortgage, Inc. ("Equity"), allowing it to fulfill the mortgage indebtedness on 11th Avenue and to recoup a $14,500 "repair reserve." Defendant served as the escrow agent for the repair reserve, and MM remitted payment on Defendant's loan, less $5622.01. Several months later, MM sold West Hamilton for $175,000 and fulfilled the mortgage indebtedness on West Hamilton. While serving as the closing agent, Defendant recouped the remainder of his investment and disbursed $6297.53 to MM. Plaintiff never received any portion of the proceeds. Shortly thereafter, MM procured a new mortgage on 11th Avenue but later defaulted on the mortgage.

On July 21, 2006, Plaintiff filed suit against Advantage Title, Defendant, MM, Mr. Hardney, Mr. Lanier, and Mr. Sharpe, claiming that he was entitled to half of the proceeds from the sale of West Hamilton and that the use of the equity from West Hamilton to pay the mortgage indebtedness on 11th Avenue was in violation of the contract. Relative to Advantage Title and Defendant, Plaintiff alleged breach of contract, fraud, and civil conspiracy. Plaintiff claimed that Defendant was intricately involved in each wrongful transaction. Defendant denied wrongdoing and filed a motion for summary judgment in which he alleged that there were no genuine issues of material fact and that he and Advantage Title were entitled to judgment as a matter of law. He asserted that he never entered into a contract with Plaintiff, that he never made any false statements to support Plaintiff's claim for fraud, and that he "never planned, agreed, or colluded with the other Defendants in a manner that would constitute a civil conspiracy." He claimed that his business relationship with MM was solely as a buyer and seller and that he never discussed forming a partnership or starting a business with the members of MM.

Plaintiff responded by asserting that Defendant had made a false material statement, namely he erroneously identified himself as an attorney and did not correct those who referred to him as an attorney. Plaintiff asserted that he entered into the agreement because he believed Defendant's status as an attorney would ensure that Mr. Hardney and Mr. Lanier acted lawfully. Plaintiff claimed that Defendant also stated that Mr. Hardney and Mr. Lanier needed his approval as a business partner. He noted that he received payment pursuant to the agreement from Defendant, not MM, Mr. Hardney, or Mr. Lanier and that Defendant continued a business relationship with them following the May agreement. He claimed that Defendant's involvement went far beyond the typical arms-length transaction expected from

a legitimate title company. Defendant denied ever identifying himself as an attorney and asserted that even if he had erroneously identified himself as an attorney, the misstatement was immaterial because he was not a party to the agreement or amended agreement. He noted that Plaintiff never relied on him for legal advice because Plaintiff was already represented by an attorney. He also denied ever entering into a partnership with MM.

On March 15, 2010, the trial court partially granted the motion for summary judgment, finding that no genuine issues of material fact remained as to the claims for breach of contract and civil conspiracy. The court found that Defendant and Advantage Title "were clearly not parties to the written contract" and that Plaintiff had not "met the requirements" to establish a civil conspiracy claim against Defendant and Advantage Title. However, the court held that a genuine issue of material fact remained as to whether Defendant, as the closing agent, "should have remitted half of the proceeds to [Plaintiff] since he was aware of the agreement that [Defendant] was to receive half of the profit from the sale of the property." The case languished in the court system on that one issue until the court entered a final order dismissing the case with prejudice against Defendant and Advantage Title for Plaintiff's failure to prosecute. This timely appeal followed.

## II. ISSUES

We restate the issues raised on appeal by Plaintiff as follows:

A. Whether the trial court erred by granting the motion for summary judgment as to the breach of contract and civil conspiracy claims.

B. Whether the trial court erred by dismissing the remainder of the case for failure to prosecute.

Defendant raised an issue on appeal that we restate as follows:

C. Whether the trial court erred by failing to grant the motion for summary judgment in its entirety.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P.

-4-

56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g. Co.*, 270 S.W.3d 1, 9 (Tenn. 2008), *superseded by statute*, 2011 Tenn. Pub. Acts ch. 498 §§ 1, 3 (codified at Tenn. Code Ann. § 20-16-101).[2] When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)

Rule 41.02(1)[3] of the Tennessee Rules of Civil Procedure governs the court's involuntary dismissal of the remainder of the case for failure to prosecute. A dismissal for failure to prosecute is subject to review under an abuse of discretion standard. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

---

[2] The Tennessee General Assembly legislatively reversed the Tennessee Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. The statute is applicable to cases filed on or after July 1, 2011. Thus, in this appeal, we will continue to apply the summary judgment standard set forth in *Hannan* because the complaint was filed on July 21, 2006.

[3] "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Tenn. R. Civ. Pro. 41.02(1).

## IV. DISCUSSION

*Breach of contract*

Plaintiff argues that the trial court erred in granting the motion for summary judgment relative to his breach of contract claim. Defendant responds that the trial court did not err in dismissing the claim against him and Advantage Title because he was clearly not a party to the agreements at issue.

In order to prevail in a breach of contract case, Plaintiff first had to prove that an enforceable contract existed between the parties. *See Seramur v. Life Care Ctrs. of Am. Inc.*, No. E2008-01364-COA-R3-CV, 2009 WL 890885, at *2 (Tenn. Ct. App. Apr. 2, 2009) (citing *BankcorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006)). A contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Higgins v. Oil, Chem. and Atomic Workers Int'l Union*, 811 S.W.2d 875, 879 (Tenn. 1991) (internal quotation and citation omitted). Tennessee courts have also defined a contract more simply as "'an agreement, upon sufficient consideration, to do or not to do a particular thing.'" *Calabro v. Calabro*, 15 S.W.3d 873, 876 (Tenn. Ct. App. 1999) (quoting *Smith v. Pickwick Elec. Coop.*, 367 S.W.2d 775, 780 (Tenn. 1963) (internal citation omitted)).

Plaintiff concedes that Defendant and Advantage Title were not named parties to the contract. Instead, Plaintiff asserts that Defendant and Advantage Title entered into a partnership with the other defendants, thereby binding Defendant and Advantage Title to the agreements at issue and subjecting Defendant and Advantage Title to liability pursuant to Tennessee Code Annotated section 61-1-306(a).[4] "[W]hether a partnership exists under conflicting evidence is [a question] of fact." *Messer Grieshiem Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn. Ct. App. 2001) (quoting *Wyatt v. Brown*, 281 S.W.2d 64, 68 (Tenn. Ct. App. 1955)). Tennessee Code Annotated section 61-1-101 defines a partnership as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit[.]" "A partnership can only be created pursuant to a contract of partnership, though such an agreement may be either express or implied." *Cryotech*, 45 S.W.3d at 605 (citing *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)). In implied partnership cases, the party alleging the existence of the partnership "carries the

---

[4]"Except as otherwise provided in subsections (b) through (g), all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." Tenn. Code Ann. § 61-1-306(a).

burden of proof of that fact by clear and convincing evidence." *See Montgomery v. Montgomery*, 181 S.W.3d 720, 726 (Tenn. Ct. App. 2005); *Story v. Lanier*, 166 S.W.3d 167, 175 (Tenn. Ct. App. 2004).

In support of his assertion that a partnership existed, plaintiff alleged that Defendant identified himself as a partner, that Mr. Hardney identified Defendant as a partner in Defendant's presence without objection, that Defendant supervised the construction on the properties, that Defendant tendered payment for the sale of West Hamilton pursuant to the initial agreement, that Defendant listed himself as the buyer of West Hamilton, and that Defendant was intricately involved in the payment of the West Hamilton mortgage and the subsequent transactions involving both properties. Plaintiff notes that Defendant cannot insulate himself from partnership liability because at all times relevant to the proceeding, MM was insolvent and not operating in compliance with the statutory requirements for limited liability companies. Defendant simply responded that neither he nor Advantage Title were listed as a party on either agreement and that he never entered into a partnership with the other defendants.

Under *Hannan*, to obtain summary judgment in his favor, Defendant must have negated an element of Plaintiff's claim or demonstrated that Plaintiff could not establish the elements of his claim. *White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012). It was not enough to simply deny Plaintiff's assertions. *Id.* With these considerations in mind, we conclude that the trial court erred in dismissing the breach of contract claim at this point in the proceedings because a material question of fact remained. In so concluding, we express no opinion as to whether Defendant and Advantage Title actually entered into a partnership with the other defendants or whether Defendant and Advantage Title may be held liable for breach of contract.

*Fraud*

Plaintiff asserts that its fraud claim survived the motion for summary judgment, while Defendant argues that the claim was dismissed. Defendant asserts that the court's decision to deny summary judgment regarding whether he should have remitted half of the proceeds, namely $3148.77, to Plaintiff was in error because there was "no legal predicate enabling" Plaintiff to recoup damages. A review of the record reveals that the court did not dismiss the fraud claim as it related to Defendant's failure to remit half of the proceeds at closing.

Under Tennessee law, in order to prevail on a claim based on fraud, a plaintiff must show the following: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably

relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise." *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

When Defendant asserted that Plaintiff could not recover under a theory of fraud because Plaintiff had not identified an intentional misrepresentation, Plaintiff responded that Defendant had erroneously identified himself as an attorney. Despite his claim for breach of contract, Plaintiff also claimed that Defendant identified himself as Mr. Hardney and Mr. Lanier's business partner. Plaintiff asserted that Defendant's claimed status as an attorney and as a business partner induced him into signing the initial agreement because he believed Defendant would ensure that everyone acted lawfully in carrying out the terms of the agreement. He notes that at that time, he was not represented by an attorney. Defendant simply responded by denying Plaintiff's assertions and claiming that any statements regarding his status as an attorney or business partner were immaterial when his status was not a modification or misrepresentation of the agreement and when he did not cause Plaintiff's injury. Whether the alleged misrepresentations altered the agreement is immaterial when Plaintiff alleged that he would not have entered into the agreement but for the misrepresentations.

Moreover, the complaint also alleged the elements necessary to sustain a claim for promissory fraud, "a *type* of fraud perpetrated by means of a false promise of future action." *Id.* (emphasis added). At all times, Plaintiff has alleged that he was induced into entering into the initial agreement with the promise that he would recoup half of the proceeds from the sale of the properties but that the defendants engaged in fraud by "convert[ing] the proceeds to their own purposes and [failing to] pay [him] as agreed." Other than denying Plaintiff's assertions and highlighting the lack of evidence, Defendant has not negated an element of Plaintiff's claim or demonstrated that Plaintiff could not establish the elements of his claim. *White*, 2012 WL 6599814, at *7. "Under *Hannan*, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support [his or] her claim." *Id.* at *7 n.3. With these considerations in mind, we conclude that the trial court did not err in denying the motion for summary judgment relative to the fraud claim at this point in the proceedings because material questions of fact remained.

*Civil conspiracy*

Plaintiff argues that the trial court erred in granting the motion for summary judgment relative to his civil conspiracy claim. He also asserts that the ruling should be reversed because the court failed to state the legal grounds upon which it relied. Defendant responds

that the trial court did not err in dismissing the claim because he never entered into any type of agreement with the other defendants. He alleges that his participation was limited to his status as a lender and closing agent.

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). "A claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings*, *Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Id.* at 179-80.

As previously stated, Plaintiff has alleged that he was induced into entering into the initial agreement with the promise that he would recoup half of the proceeds from the sale of the properties but that the defendants engaged in fraud by "convert[ing] the proceeds to their own purposes and [failing to] pay [him] as agreed." Other than denying Plaintiff's assertions and highlighting the lack of evidence, Defendant has not negated an element of Plaintiff's claim or demonstrated that Plaintiff could not establish the elements of his claim. *White*, 2012 WL 6599814, at *7. "Under Hannan, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support [his or] her claim." *Id.* at *7 n.3. With these considerations in mind, we conclude that the trial court erred in granting the motion for summary judgment relative to the civil conspiracy claim at this point in the proceedings because material questions of fact remained.

### Dismissal for failure to prosecute

Plaintiff argues that the trial court erred in dismissing the remainder of his case with prejudice for failure to prosecute. He claims that his difficulty in prosecuting the case was a result of his poverty and homelessness caused by the defendants. He asserts that he continually sought a trial date but that the court blatantly ignored his request before dismissing the case with prejudice. Defendant responds that the court did not err in dismissing the case for failure to prosecute when the case had languished in the court system for several years.

"Neither dismissals nor default judgments are favored by the courts. Dismissals based on procedural grounds like failure to prosecute . . . run counter to the judicial system's general objective of disposing of cases on the merits." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) (citations omitted). However, such dismissals remain within the trial court's sound discretion. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App.

2002). Rule 41.02(3)[5] of the Tennessee Rules of Civil Procedure even provides that a dismissal for failure to prosecute operates as an adjudication upon the merits unless otherwise specified. Rules 18.01 and 18.02 of the local rules of practice in Davidson County further provide,

**18.01 - Time Standards**
All civil cases must be concluded or an order setting the case for trial obtained within twelve (12) months from date of filing unless the court has directed a shorter or longer period.

**18.02 - Dismissal of Cases**
To expedite cases, the court may take reasonable measures including dismissal or entering a scheduling order to enforce the time standard set forth above.

A brief outline of the procedural history immediately preceding the dismissal in this case is as follows:

There is no dispute that after the summary judgment ruling in favor of Defendant and Advantage Title on several issues, the case languished for over two years.

Eventually, on August 23, 2013, the trial court entered an order directing Plaintiff to either: (1) file a motion to set the case for trial; or (2) obtain specific permission for exemption from the one-year rule within thirty days.

Less than thirty days later, on September 11, 2013, Plaintiff filed a motion seeking both types of relief previously offered by the trial court: (1) exemption from the one-year rule; and (2) specifically "mov[ing] [the trial court] to set this case for trial on a non-jury trial date."

Defendant filed a response on September 18, 2013, arguing that the case should be dismissed due to inactivity.

The trial court held a hearing on September 27, 2013, specifically noting that the hearing concerned "Plaintiff's Motion for Exemption from the One-Year Rule and To Set for Trial." Thereafter, the trial court entered an order directing Plaintiff "to

---

[5] "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits." Tenn. R. Civ. Pro. 41.02(3).

submit a proposed order of dismissal as to all the parties and all the issues in the case. Otherwise this case shall be dismissed without prejudice." The trial court appears to have overlooked Plaintiff's request to set the case for trial.[6]

Apparently in an effort to correct the trial court's purported error, Plaintiff filed an additional motion on November 8, 2013, captioned, "Motion to Set for Trial and/or Motion to Alter or Amend Under Rule 59." The motion stated:

> Plaintiff, by and through counsel, moves this Honorable Court for an Order setting the above referenced matter for trial at the earliest possible date. The plaintiff had previously filed a motion for extension to be exempt from the one-year rule which was heard on September 27, 2013. The Court granted and denied the motion in part but the entered order made it impossible for the Plaintiff to set this matter for trial.
>       Plaintiff merely wants his day in Court and prays the matter be set promptly for the next available two day period.

Defendant filed a response on November 21, 2013, arguing that the case should be dismissed, but not specifically addressing Plaintiff's request to set the case for trial.

On December 16, 2013, the trial court entered an order dismissing Plaintiff's case against Defendant and Advantage Title with prejudice "as a result of Plaintiff's failure to take steps to prosecute this action."

We are sympathetic with the court's frustration and desire to control its docket; however, the trial court's decision on this issue in this case constitutes an abuse of discretion. Here, the trial court directed Plaintiff to either seek further exemption from the one-year rule or set the case for trial within thirty days. Plaintiff did both. While the trial court was within its discretion to deny the request for exemption, the trial court ignored Plaintiff's attempt to set the case for trial. Plaintiff seasonably brought that omission to the trial court's attention and again requested that the case be set for trial. This court cannot conclude that Plaintiff failed to comply with the trial court's orders or that he was unwilling to prosecute his case when he complied with the trial court's order by requesting that a trial date be set. In failing to consider Plaintiff's compliance with its previous order directing Plaintiff to set the case for trial, the trial court acted "against logic or reasoning [and] cause[d] an injustice" to

---

[6]The record on appeal contains no transcript from this hearing.

Plaintiff. *Eldridge*, 42 S.W.3d at 85 (quoting *Shirley*, 6 S.W.3d at 247). Accordingly, we hold that the trial court abused its discretion in dismissing Plaintiff's remaining claims pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure. In accordance with our holding, we reinstate those claims and remand to the trial court for further proceedings.

## V. CONCLUSION

The judgment of the trial court is reversed, as to the grant of summary judgment relating to the breach of contract and civil conspiracy claims and the dismissal for failure to prosecute. The judgment of the trial court is affirmed, as to the denial of the motion for summary judgment relating to the fraud claim. The case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed to the appellees, Advantage Title and Escrow and Victor Hazelwood.

_____
JOHN W. McCLARTY, JUDGE